IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **VERRON FRANCIS BRETEMPS,** | * |
| Plaintiff, | * |
| v. | * |
| | *    Civil Case No.: PWG-12-2638 |
| **TOWN OF BRENTWOOD, MARYLAND,** *et al.* | * |
| | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Verron Francis Bretemps has lived all his life in the small town of Brentwood, Maryland. He has brought this § 1983 action alleging that he was subject to hostile targeting by the mayor and police chief in retaliation for his opposition to the creation of a Town of Brentwood police force. For example, he asserts that he was cited for violations of the town code, charged with criminal conduct, and arrested—all without any valid justification—in violation of the First and Fourth Amendments. Defendants have moved for summary judgment, arguing that the undisputed facts show that Plaintiff was little more than an annoying gadfly and unrepentant scofflaw whose citations resulted only from actual and blatant violations of the law. Because a reasonable jury could find that Plaintiff was unfairly and improperly targeted, I disagree with Defendants and deny this motion for summary judgment.

**I. FACTUAL BACKGROUND**

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in that party's favor. *Ricci*

*v. DeStefano*, 557 U.S. 557, 585–86 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Unless otherwise stated, this background is composed of undisputed facts. Where a dispute exists, I consider the facts in the light most favorable to Plaintiff. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

"Incorporated in 1922, the Town of Brentwood [the "Town"] is an economically and culturally diverse community . . . nestled between Queens Chapel Road and U.S. Rte. 1, just outside the Nation's Capital" in Prince George's County. Town of Brentwood, *Welcome to the Town of Brentwood*, http://www.townofbrentwood-md.us/ (last visited March 21, 2014). The Town covers an area of approximately 0.38 square miles, U.S. Census Bureau, *2013 National Places Gazetteer Files: Maryland*, http://www2.census.gov/geo/gazetteer/2013_Gazetteer/ 2013_gaz_place_24.txt (last visited March 21, 2014), and has a population of just over 3,000 people, U.S. Census Bureau, *Community Facts*, http://factfinder2.census.gov/faces/nav/jsf/pages/ community_facts.xhtml (search for "Brentwood, MD") (last visited March 21, 2014). "The town of Brentwood is governed by a Council which consists of the Mayor and four Council members, each elected to serve two year terms." Defs.' Summ. J. Mem. 1, ECF No. 36-1 (citing Compl. ¶ 7, ECF No. 1).[1] At all times relevant to this case, Defendant Xzavier Montgomery-Wright was the elected mayor of the Town. *Id.* (citing Compl. ¶ 4). Plaintiff Verron Francis Bretemps is a life-long resident of the Town and a former elected councilman who owns three properties in the Town. *Id.* (citing Compl. ¶ 7–8).

---

[1] Several facts that Defendants denied in their answers, *see* Ans., ECF No. 6; Ans., ECF No. 25, have been cited in their Summary Judgment Memorandum. Accordingly, these allegations appear to have been adopted by Defendants and therefore may be considered on summary judgment. *See* Fed. R. Evid. 801(d)(2)(B).

This dispute arises out of the creation of a Town police department in 2009, to which Plaintiff vehemently was opposed. *Id.* (citing Compl. ¶ 10–12). Defendant Wright supported the creation of a police department, *id.* (citing Compl. ¶ 12). It is undisputed that Plaintiff's opposition to the police department led to repeated, and sometimes heated, disputes between Plaintiff and Defendant Wright. *See, e.g.*, Council Minutes Sept. 8, 2009, at 3, Defs.' Summ. J. Ex. 3, ECF No. 36-6; Council Minutes Oct. 6, 2009, at 5, Defs.' Summ. J. Ex. 5, ECF No. 36-8; Council Minutes Nov. 3, 2009, at 3, Defs.' Summ. J. Ex. 7, ECF No. 36-10. Nor was Plaintiff the only person whose opposition to the establishment of a police force brought him into conflict with Wright. *See* Council Minutes Sept. 9, 2009, at 4, Defs.' Summ. J. Ex. 4, ECF No. 36-7 ("Mayor Wright caution's [*sic*] this issue has potential for volatility. Need to be security conscious and prepared for outbursts. Suggest police be on hand."). On October 13, 2009, the Town Council approved a resolution to "reestablish" a Town police department. Council Minutes Oct. 13, 2009, Defs.' Summ. J. Ex. 6, ECF No. 36-9. This did not bring an end to the dispute, though, as a council member representing the swing vote in favor of the police department resigned on January 12, 2010, and Plaintiff ran for election to fill the vacancy. *See* Bretemps Aff. ¶ 7, Pl.'s Summ. J. Opp'n Ex. 1, ECF No. 46-2.

Defendant David Risik was sworn in as Chief of Police on December 17, 2009. Council Minutes Dec. 17, 2009, Defs.' Summ. J. Ex. 9, ECF No. 36-12. Once in office, Risik undertook a campaign to step up the enforcement of various town code provisions dealing with how residents maintained their properties. *See* Memorandum from David Risik to Mayor Xzavier Montgomery-Wright 2 (March 5, 2010), Defs.' Summ. J. Ex. 12, ECF No. 36-15 ("Lastly, I have begun enforcement of Section 144-8.1. This Code section prohibits parking on unpaved residential areas, and for the impounding of cars, trailers, and other unregistered and non-

operating vehicles."). As part of this campaign, on March 4, 2010 Risik issued three citations (the "March 4 Citations") and Warnings to Tow to Plaintiff for a violation of Town Code § 144-8.1, which prohibits parking a vehicle on an unpaved or insufficiently paved surface, at Plaintiff's property at 3608 Upshur Street. *See* March 4 Citations, Defs.' Summ. J. Mem. Ex. 10, ECF No. 13; Warnings to Tow, Defs.' Summ. J. Ex. 11, ECF No. 36-14. Plaintiff has produced evidence showing that many other town residents whose vehicles were parked similarly were not cited by Risik. *See* Bretemps Dep. 86:17–21, Defs.' Summ. J. Ex. 38, ECF No. 36-40; Wright Dep. 50:15, Defs.' Summ. J. Ex. 35, ECF No. 36-37. Risik has stated that his standard practice was to issue a notice of a violation before issuing a citation, and that he frequently would make accommodations for those who had been cited for legitimate code violations. Risik Dep. 40:9 – 41:7, Defs.' Summ. J. Ex. 33, ECF No. 36–35. Plaintiff has stated that he did not receive a notice with respect to the March 4 Citations, Bretemps Dep. 80:4–19. Risik believed that he may have cited and towed the car of another resident for violating the same code provision, but the car was returned after the resident "apologized." Risik Dep. 41:20 – 42:3. Plaintiff also argues, at considerable length, that he did not actually violate any code provisions. *See, e.g.*, Pl.'s Summ. J. Opp'n 7–8. Plaintiff contested the citations and prevailed at trial on April 29, 2010; Risik did not appear. Bretemps Dep. 85:3–21.

On March 9, 2010, a confrontation occurred between Bretemps and Risik at a Town Council meeting. At the public comment portion of that meeting, referred to as "suspension of rules," Plaintiff spoke twice and, the second time, exceeded his allotted time. Video Recording of March 9, 2010 Council Meeting (the "Video Recording"), Defs.' Summ. J. Ex. 13, ECF No. 36-3. According to a video recording of the meeting, after Plaintiff's time expired, Wright says "thank you" several times, each increasing in volume, in a clear attempt to inform Plaintiff that

4

his turn to speak had ended. *Id.* Eventually, Wright expressly asks Plaintiff to sit down, at which point Risik's voice can be heard off camera shouting at Plaintiff to "sit down or get out!" *Id.* Plaintiff can be seen to respond but does not appear to raise his voice or become animated, and Plaintiff takes a step back from the podium before Risik enters from off camera speaking loudly and draws within a few inches of Plaintiff. *Id.* It is not possible to determine what is said, but Plaintiff does not appear to be acting in an aggressive or threatening manner and, almost immediately after Risik steps away from Plaintiff, he sits down. *Id.* Wright then orders the tape turned off, *id.*, and she has testified that the tape was stopped for several minutes. Wright Dep. 93:18 – 97:19. However, the Video Recording does not appear to have been interrupted. Video Recording. Plaintiff was not cited or arrested at the March 9 meeting.

Two days later, on March 11, 2010, Risik filed an Application for Statement of Charges in the District Court for Prince George's County, charging Plaintiff with one count of violating Md. Code Ann., Crim. Law § 10-201(c)(2), which prohibits "act[ing] in a disorderly manner that disturbs the public peace," and one count of violating Crim. Law § 10-201(c)(3), which prohibits the "fail[ure] to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." Disorderly Conduct Charges, Defs. Summ. J. Ex. 15, ECF No. 36-18. Risik sought an arrest warrant with respect to those charges. *Id.* When he met with the Assistant State's Attorney, the attorney told Risik that "he just didn't see disorderly conduct," Risik Dep. 75:9–10, and Risik has acknowledged that "the tape doesn't show what I remembered," *id.* at 75:13–14.

On April 28, 2010, Risik affixed a "Warning to Tow" notice on a vehicle parked at Plaintiff's property on 4105 38th Street. *See* Warning to Tow, Defs. Summ. J. Ex. 16, ECF No. 36-19; Defs.' Summ. J. Mem. 11; Pl.'s Summ. J. Opp'n 13. The Warning to Tow cited Code

§ 144-8.1 relating to parking on unpaved surfaces. Warning to Tow, Defs.' Summ. J. Mem. Ex. 16. When Risik arrived at Plaintiff's property on April 30, 2010 with the intent to tow the vehicle, he found that Plaintiff had built a wooden structure entirely surrounding it. Risik Dep. 88:13–18. It appears that Plaintiff was cited for illegally constructing that structure, Bretemps Dep. 114:6–7, but the case was dismissed on a declaration of nolle prosequi, *id.* at 114:11–12, and Plaintiff maintains that the structure was legal under the Town Code, *id.* at 115:7–9, and that, by enclosing his vehicle, Plaintiff brought it into compliance with the Town Code, *id.*

On May 3, 2010, Risik filed two Applications for Statement of Charges, one charging Plaintiff with obstructing and hindering a law enforcement officer in violation of Crim. Law § 9-306 based on the erection of the structure around his car at the 38th Street property, 38th Street Charges, Defs. Summ. J. Ex. 18, ECF No. 36-20, and one charging him with the same statute based on allegations that Plaintiff presented Risik from towing an abandoned vehicle at the Upshur Street property by parking cars to block it in. Upshur Street Charges, Defs.' Summ. J. Ex. 19, ECF No. 36-21. Plaintiff has stated that the vehicles that prevented towing were "just parked in my own driveway" in Plaintiff's usual manner, and were not parked there to prevent his vehicles being towed. Bretemps Dep. 118:3–12. A bench warrant was issued for Plaintiff. 38th Street Charges 4–5; Upshur Street Charges 4. Although the bench warrant was quashed on June 17, 2010, Pl.'s Ans. to Defs.' Interrogs. 5, Pl.'s Opp'n Ex. 2, ECF No. 46-3, Plaintiff was arrested on June 30, 2010, *id.* He was released shortly thereafter. *Id.* On July 30, 2010, the obstruction and hindering charges against Plaintiff were dropped, and on September 15, 2010, the abandoned vehicle charges against Plaintiff also were dropped. *Id.* at 6.

On March 8, 2011, Risik sent an email to an acquaintance after his "contract abruptly [was] not renewed." Email from David Risik to sgt.mace@yahoo.com et al. (March 8, 2011),

Defs.' Summ. J. Ex. 34, ECF No. 36-36.  In that email, Risik said that "[t]he Mayor[, Wright,] guided each and every step I took," and "[s]he directed me to go after Bretemps and several other Code violators."  *Id.*  In his deposition, Risik testified that, notwithstanding the email, he "didn't tell the mayor everything [he] did" with respect to Plaintiff.  Risik Dep. 115:17 – 117:5.

On August 13, 2012, Plaintiff filed his six-count Complaint in the Circuit Court for Prince George's County, Compl., alleging: (i) a § 1983 First Amendment claim against Risik and Wright; (ii) a § 1983 Fourth Amendment claim for prosecution without probable cause against Risik and Wright; (iii) § 1983 abuse of process claim against Risik and Wright; (iv) a § 1983 conspiracy claim against Risik and Wright; (v) a *Monell* claim against the Town; and (vi) Maryland state constitutional claims.  Compl. 10–13.  Defendants removed to this Court on September 5, 2012, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.  Notice of Removal, ECF No. 1.  On November 28, 2012, pursuant to a partial motion to dismiss, Judge Motz dismissed the state constitutional claims set forth in Count VI for failure to comply with the Local Government Tort Claims Act, but declined to dismiss the *Monell* claim stated in Count V even though he thought it unlikely that it could succeed.  Letter Opinion, ECF No. 22; Order, ECF No. 23.

This case was reassigned to me on January 10, 2013.  Discovery was completed around July 15, 2013, Status Report, ECF No. 34, and Defendants filed their motion for summary judgment on July 31, 2013, Defs.' Summ. J. Mot., ECF No. 36.  That motion has been fully briefed and now is before me.  *See* Pl.'s Summ. J. Opp'n; Defs. Summ. J. Reply, ECF No. 49.  Having reviewed the filings, I find that a hearing is unnecessary.  Loc. R. 105.6.

7

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, ---- F. Supp. 2d ----, 2013 WL 4559516, at *12 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin*, 107 F. Supp. 2d at 671. The substantive law governing the case determines what is material. *See Hoovan-Lewis v. Caldera*, 249 F.3d 259,

265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant, in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

## III. DISCUSSION

### A. Count I: § 1983 First Amendment Retaliation

Plaintiff alleges that the enforcement actions taken by Risik—and allegedly directed by Wright—were taken to retaliate against Plaintiff for his vocal and continued opposition to the Town police department. *See* Compl. ¶¶ 45–47.

> [A] § 1983 retaliation plaintiff must establish three elements in order to prove a First Amendment § 1983 retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. *See Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990). Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. *See* [*ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)] (stating that "a showing of adversity is essential to any retaliation claim"). Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action. *See Huang*, 902 F.2d at 1140.

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000); *see also Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (same).

Defendants acknowledge that at least some of "Plaintiff's speech was protected in the sense that he was free to comment regarding his political views." Defs.' Summ. J. Mem. 38. And insofar as Defendants argue that "Plaintiff's failure and refusal to comply with the Town's laws is not protected speech or conduct," Defs. Reply 9, they actually are arguing that Plaintiff's speech was not the cause of the enforcement action against him. Accordingly, this element is not disputed and the only disputed issues are whether the alleged retaliatory actions—that is, attempts to enforce the town code—adversely affected Plaintiff's speech and whether those actions were caused by his speech or were caused independently by his continued violations of the law.

9

With regard to the second element, Defendants argue that "Plaintiff has failed to come forward with evidence to demonstrate Defendants' alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Plaintiff continued to air his beliefs, thoughts, disagreement, and opposition at Council meetings despite the citations and criminal charges brought against him . . . ." Defs.' Summ. J. Mem. 39. Defendants misstate the law. "The test is not whether [Plaintiff's] First Amendment rights were chilled, but whether a person of reasonable firmness in [Plaintiff's] situation would have been chilled." *Ruttenberg v. Jones*, 283 F. App'x 121, 130 (4th Cir. 2008); *see also Blankenship v. Manchin*, 471 F.3d 523, 530 (4th Cir. 2006) (noting that this is an "objective inquiry"). This "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686 (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). A reasonable jury could find that by citing Plaintiff and seeking his arrest, Risik "'engaged the punitive machinery of the government in order to punish . . . [Plaintiff] for speaking out.'" *Blankenship*, 471 F.3d at 531 (quoting *Naucke v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)).

Defendants also argue that Plaintiff "has utterly failed to meet the rigorous causation requirement, as there is no evidence to link Plaintiff's speech . . . and the civil citations and criminal charges brought against Plaintiff . . . for his unprotected behavior after a Police Department was formed and a Chief was hired." Defs. Summ. J. Mem. 40. But "[r]etaliation . . . is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." *ACLU v. Wicomico Cnty., Md.*, 999 F.3d 780, 785 (4th Cir. 1993) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 428 U.S. 274 (1977). Here Plaintiff has produced evidence that, even though at least 107 other residents had a dual strip driveway, Bretemps Dep.

10

86:17–21, he alone was cited for having an improper driveway, Wright Dep. 50:15 ("Those people were not given citations."). Risik also had testified that he gave other individuals warnings instead of citations and was willing to discuss alternatives short of citations or towing vehicles, Risik Dep. 40:9 – 42:3, whereas there is a dispute over whether Plaintiff received similar consideration from Risik, *see* Bretemps Dep. 73:1–8. And a reasonable juror viewing the video of the March 9, 2010 Council Meeting also could conclude without difficulty that nothing Plaintiff did at that meeting was a valid basis for the resulting disorderly conduct charges, *see* Video Recording—particularly in light of the prosecutor's refusal to proceed on those charges, *see* Risik Dep. 75:9–10. This is a sufficient basis on which a jury could find causation.

Accordingly, summary judgment on Count I is not appropriate.

### B. Count II: § 1983 Fourth Amendment Prosecution without Probable Cause

Plaintiff appears to allege that he was arrested on "charges of disorderly conduct and obstruction and hindering" without probable cause, in violation of his Fourth Amendment right against unreasonable seizures. *See* Compl. ¶¶ 48–50. "Subject to limited exceptions, a seizure must be based on probable cause in order to be reasonable." *Schultz v. Braga*, 290 F. Supp. 2d 637, 648 (D. Md. 2003) (citing *Dunaway v. New York*, 442 U.S. 200, 214 (1979); *Wilson v. Kittoe*, 337 F.3d 392, 2003 WL 21693665, at *4 (4th Cir. 2003)). Probable cause requires "'facts and circumstances within the officer's knowledge [that] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" *Crouch v. City of Hyattsville*, No. DKC-09-2544, 2012 WL 6019296, at *4 (D. Md. Nov. 30, 2012) (quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)). This is an objective inquiry, and the officer's subjective motivations are not material. *See Kentucky v. King*, 131 S. Ct. 1849, 1859 (2011).

With respect to the 38th Street Charges, a reasonable jury could conclude that Risik lacked probable cause to charge Plaintiff. Md. Code Ann., Crim. Law § 10-201 makes it a crime to "willfully act in a disorderly manner that disturbs the public peace," § 10-201(c)(2), or to "willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace," § 10-201(c)(3). Here, it does not appear that Plaintiff engaged in an extended or abusive tirade such as was sufficient to uphold a disorderly conduct conviction in *Polk v. State*, 835 A.2d 575, 583 (Md. 2003). Nor is it clear that Plaintiff's conduct was likely to cause a physical altercation or other breach of the peace as was the case in *Spry v. State*, 914 A.2d 1182, 1183–84 (Md. 2007). Although Risik's Application for Statement of Charges described a heated altercation with Plaintiff, the video of the March 9 meeting belies this, showing Plaintiff responding calmly to being shouted at and confronted by several individuals including Risik. Video Recording. Moreover, Risik himself has acknowledged that when he spoke with the Assistant State's Attorney prosecuting the case against Plaintiff, the basis for the charges that he remembered were "not there [in the video] for some reason . . . so [the ASA] recommended we drop it." Risik Dep. 75:17 – 76:2. Thus, a reasonable jury could find with ease that there was no basis for probable cause at the March 9 meeting.

With respect to the obstruction charges, Crim. Law § 9-306 makes it a crime to "by threat, force, or corrupt means, obstruct, impede, or try to obstruct or impede the administration of justice in a court of the State." The elements of obstructing or hindering an officer are: "(1) A police officer engaged in the performance of a duty; (2) An act, or perhaps an omission . . . which obstructs or hinders the officer in performance of that duty; (3) Knowledge by the accused of facts comprising element (1); and (4) Intent to obstruct or hinder the officer." *Cover v. State*, 466 A.2d 1276, 1284 (Md. 1983).

A reasonable jury could find that by building a structure around the vehicle at 4105 38th Avenue, Plaintiff actually brought his car into compliance with the code by enclosing it, *see* Bretemps Dep. 111:17 – 115:12. If true, this would mean that Risik was not performing a lawful duty in attempting to tow Plaintiff's vehicle and that the structure not only did not obstruct Risik's duties but obviated any right he had to tow the vehicle.

With respect to the Upshur Street Charges, Bretemps has testified that he had done nothing deliberate to block in the car that Risik sought to tow, but rather had his cars parked in their usual locations at either end of his driveway. Bretemps Dep. 118:3–19. A reasonable jury could find, therefore, that Risik lacked probable cause to believe that vehicles parked in Plaintiff's driveway were placed there with the intent to obstruct or, because the cars usually were parked there, *id.*, that their presence in Bretemps's driveway had anything to do with Risik's attempts to tow the vehicle at all.

Accordingly, summary judgment is not appropriate with respect to Count II.

### C. Count III: § 1983 Abuse of Process

Count III alleges abuse of process arising out of Plaintiff's arrest.

> A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000) To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

*Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

There is no question that Defendants (or at least Risik) caused Plaintiff's arrest on charges of obstruction and hindering. Pl.'s Ans. to Defs.' Interrogs. 5. There also is no question that the related criminal proceedings—and, in fact, all proceedings against Plaintiff that are at

issue in this suit—terminated in Plaintiff's favor. *See id.* And for the reasons stated above, a reasonable jury could find that there was no probable cause to charge Plaintiff with the offenses for which he was arrested. *See supra.* Accordingly, summary judgment is not appropriate with respect to this count.

### D. Count IV: Conspiracy

Count IV alleges that Wright and Risik conspired with one another with respect to Counts I, II, and III. Compl. ¶¶ 54–55. Defendants allege that such a claim is barred by the "intracorporate conspiracy doctrine," which holds that "'[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Busci v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)).

However, this count does not appear to allege that the Town itself was conspiring to violate Plaintiff's rights, but rather that Wright and Risik, in their individual capacities, were doing so. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978) (holding that although municipalities may be liable under § 1983, such liability must rest on more than a mere *respondeat superior* theory). Risik has asserted that "[t]he Mayor[, Wright,] guided each and every step I took," and "[s]he directed me to go after Bretemps and several other Code violators." Email from David Risik to sgt.mace@yahoo.com et al. As such, it is entirely possible that they had conspired with one another, and such a theory is not barred by the intracorporate conspiracy doctrine. Defendants are not entitled to summary judgment on Count IV.

### E. Count V: *Monell* Claim

Finally, Plaintiff alleges that the Town itself is liable for the actions of Wright and Risik. Compl. ¶¶ 56–59. "Units of local government, such as the [Town], are . . . 'persons' which may be sued under § 1983 although . . . not on a *respondeat superior* basis." *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999); *see Monell*, 436 U.S. 658, 690–91 (1978). A local government only may be sued where the "deprivation underlying the § 1983 claim is 'caused by a statute, regulation, policy, or custom of the governmental entity' that the official was implementing." *DiPino*, 729 A.2d at 369 (quoting *Ashton v. Brown*, 660 A.2d 447, 468 (Md. 1995). The government's policy or custom must have "played a part in the deprivation" underpinning the plaintiff's claim, *id.*, that is, "action pursuant to official municipal policy of some nature [must have] caused a constitutional tort," *Monell*, 436 U.S. at 691.

"Municipality liability attaches [] where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 482 (1986). Here, a jury could find that Wright, in her capacity as Mayor, set municipal policy with respect to law enforcement and ordered Risik to scrutinize or retaliate against Bretemps. *See supra*. If the jury were to so find, then Plaintiff could prevail on a *Monell* claim against the Town.[2]

Accordingly, summary judgment is not appropriate on Count V.

---

[2] I note that Plaintiff's conspiracy claim appears to require that Wright and Risik were not acting as agents of the Town, *see supra*, and, therefore, is inconsistent with Plaintiff's *Monell* claim. Plaintiff may proceed on inconsistent theories. *See* Fed. R. Civ. P. 8(d)(2)–(3). Whether it is wise for him to do so before a jury is not a question presented to me for resolution.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be DENIED.

A telephonic Scheduling Conference shall take place on Wednesday, April 2, 2014 at 10:30 a.m. in order to set this case in for a jury trial and to set other ancillary deadlines. Counsel for Plaintiff is to initiate that call.

Dated: March 24, 2014                                          /S/
                                                    Paul W. Grimm
                                                    United States District Judge

dsy